Cecil and Leona NELSON *v.* RIVER VALLEY
BANK & TRUST

97-1367                                   971 S.W.2d 777

Supreme Court of Arkansas
Opinion delivered July 9, 1998

*Oscar Stilley,* for appellant.

*Ledbetter, Hornberger, Cogbill, Arnold & Harrison,* by: *J. Michael Cogbill* and *Virginia C. Trammell,* for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellants, Cecil and Leona Nelson, claimed that a demand note issued by the appellee, River Valley Bank and Trust, was usurious because the interest rate was more than five percentage points above the federal discount rate. The trial court granted summary judgment to River Valley because it held that federal law preempted Arkansas usury law. The Nelsons appeal that ruling, and River Valley cross-appeals the trial court's denial of its request for attorneys' fees and expenses. We affirm both rulings.

The facts of this case are undisputed. On August 2, 1993, the Nelsons obtained a loan from River Valley for the purchase of a residential manufactured home. The loan was a demand note in the amount of $16,303.73 with an annual interest rate of 9.5%. In exchange for the loan, River Valley retained a security interest in the mobile home and received a first priority mortgage on the Nelsons' real property located in Crawford County. At the time the demand note was executed, the federal discount rate was 3%. River Valley called the demand note on June 9, 1994, and the parties executed a loan extension agreement for the remaining portion of the debt at 10.5% interest. River Valley called the note a second time on January 5, 1995, and the parties executed another loan extension agreement at 11% interest. The Nelsons continued to pay the note until they found another source of credit in May of 1996.

In January of 1997, the Nelsons filed a complaint, on their own behalf and on behalf of all other similarly situated persons, alleging that this type of loan by River Valley was usurious in violation of Article 19 § 13 of the Arkansas Constitution, which sets the maximum lawful rate of interest at five percent above the federal reserve discount rate. In response, River Valley argued that section 501 of the Depositor Institutions Deregulation and Mone-

tary Control Act (Monetary Control Act), 12 U.S.C. § 1735f-7a, preempted Arkansas usury law. Both parties subsequently moved for summary judgment.

On July 31, 1997, the trial court granted summary judgment in favor of River Valley. In its order, the trial court ruled that the Monetary Control Act preempted state usury law when the loan was secured by either: 1) a first lien on residential real property, or 2) a first lien on residential manufactured housing, and the lender complied with consumer-protection regulations. Because the Nelsons' loan was secured by both a lien on real property and a security interest in the mobile home, the trial court ruled that the section of the Monetary Control Act that allowed the highest interest rate was applicable. The court then concluded that "the part of the statute which preempts loan[s] secured by first liens on residential real property is controlling and federal law preempts the Arkansas Constitution and the loan is not usurious." Accordingly, the trial court dismissed the Nelsons' usury complaint with prejudice. Approximately one month later, the trial court denied River Valley's motion for attorneys' fees and expenses. The trial court did not rule upon the Nelsons' motion for class certification prior to dismissal of their complaint.

## I. Preemption

On appeal, the Nelsons contend that the trial court erred when it granted summary judgment in favor of River Valley. As we have said on numerous occasions, summary judgment is appropriate when there are no genuine issues of material fact to be litigated, and the moving party is entitled to judgment as a matter of law. *Golden Tee, Inc. v. Venture Golf Schs., Inc.*, 333 Ark. 253, 969 S.W.2d 625 (1998); *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). In making this determination, we view the evidence in the light most favorable to the Nelsons, as the parties resisting the motion, and resolve all doubts and inferences in their favor. *Golden Tee, supra; Adams, supra.*

Article 19 § 13 of the Arkansas Constitution (as modified by Amendment 60) provides that "[t]he maximum lawful rate of interest on any contract entered into after the effective date

hereof shall not exceed five percent (5%) per annum above the Federal Reserve Discount Rate at the time of the contract." Ark. Const., art. 19, § 13(a)(i). If a party claiming that a loan is usurious prevails, he or she is entitled to "twice the amount of interest paid" on the note, and the remaining portion of the loan, if any, is deemed void. Ark. Const., art. 19, § 13(a)(ii). When the Nelsons signed their loan containing a 9.5% interest rate, the federal reserve discount rate was 3%. Hence, the loan would be usurious if the Arkansas Constitution governed.

▮ Arkansas usury law, however, is preempted by section 501 of the Monetary Control Act of 1980 if the loan meets certain conditions. *In re Lawson Square, Inc.*, 816 F.2d 1236 (8th Cir. 1987); *Draper v. Castle Home Sales, Inc.*, 711 F. Supp. 1499 (E.D. Ark. 1989), *aff'd*, 894 F.2d 1341 (8th Cir. 1989). Specifically, subsection 501(a)(1) of the Monetary Control Act provides that:

> The provisions of the constitution or the laws of any State expressly limiting the rate or amount of interest, discount points, finance charges, or other charges which may be charged, taken, received, or reserved *shall not* apply to any loan . . . which is —
>
> (A) secured by a first lien on residential real property, by a first lien on stock in a residential cooperative housing corporation where the loan is used to finance the acquisition of the stock, *or* by a first lien on a residential manufactured home.

(codified at 12 U.S.C. § 1735f-7a(a)) (emphasis added). Subsection 501(c) of the Monetary Control Act adds the following conditions to federal preemption:

> The provisions of subsection (a)(1) shall not apply to a loan . . . which is secured by a first lien on a residential manufactured home unless the terms and conditions relating to such loan . . . comply with consumer protection provisions specified in regulations prescribed by the Federal Home Loan Bank Board.

(codified at 12 U.S.C. § 1735f-7a(c)).

In *Troutt v. First Fed. Sav. & Loan Ass'n*, 280 Ark. 505, 659 S.W.2d 183 (1983), we held that subsection 501(a) of the Monetary Control Act preempted Arkansas usury law because Troutt's loan was secured by a first lien on residential real property. Likewise, in *Rhode v. Kremer*, 280 Ark. 136, 655 S.W.2d 410 (1983),

we found federal preemption of Arkansas usury law when a loan was secured by a lien on a mobile home as mentioned in subsection 501(c). This case is different from *Troutt* and *Rhodes* because the Nelsons' loan was secured by a first lien on residential real property *and* a first lien on the mobile home.

On appeal, the Nelsons argue that pursuant to subsection 501(c), a note secured by a first lien on a mobile home must comply with the consumer-protection regulations regardless of whether the note is also secured by a lien on residential real property. We disagree with this interpretation for several reasons.

█ First and foremost, the accompanying regulations to the Monetary Control Act explain that:

> The provisions of the constitution or law of any state expressly limiting the rate or amount of interest . . . shall not apply to any Federally-related loan:
> (1) Made after March 31, 1980; and
> (2) Secured by a first lien on:
>     (i) Residential real property;
>     (ii) Stock in a residential cooperative housing corporation when the loan is used to finance the acquisition of such stock; *or*
>     (iii) A residential manufactured home: *Provided*, That the loan so secured contains the consumer safeguards required by § 590.4 of this part.

12 C.F.R. § 590.3 (1998) (emphasis added). This regulation defeats the Nelsons' argument because it clearly provides that compliance with consumer safeguards is not required when the loan is secured by a first lien on residential real property. We also find persuasive the fact that section 501 of the Monetary Control Act and regulation 590.3 are written in the disjunctive, thereby indicating that Congress intended our state usury law to be preempted if any one of three situations exists. *See Office of Child Support Enforcement v. Harnage*, 322 Ark. 461, 910 S.W.2d 207 (1995); *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979) (describing the meaning of the word "or" in a state statute).

Finally, Congress gave explicit instructions on how to interpret apparently conflicting provisions of the Monetary Control Act when it said in section 528 that:

> In any case in which *one or more provisions* of, or amendments made by, this title, section 529 of the National Housing Act, or any other provision of law . . . apply with respect to the same loan . . . such loan . . . may be made at the highest applicable rate.

Pub. L. No. 96-221, § 528, 94 Stat. 168 (1981)[1] (emphasis added).

■ In *Bank of New York v. Hoyt*, 617 F. Supp. 1304 (D.R.I. 1985), the Rhode Island District Court explained that:

> Section 528 itself informs the Act as an entirety: Congress recognized the imbricated texture of certain borrowings and ordained that, in such circumstances, the provisions of federal law most hospitable to the viability of the loan should apply.

In *Hoyt*, the federal court used section 528 to reconcile two contradictory sections of the Monetary Control Act: section 511 dealing with financing for third-party residential construction, and section 501(a) dealing with loans secured by a first mortgage on residential real property. *Id.* The Nelsons argue that section 528 is inapplicable when two *sub*sections of the Act are contradictory. We find no merit in this argument because section 528 clearly states that it applies to contradictory "provisions" which could equally mean sections or subsections. In any event, section 528 applies in "any case in which *one* or more provisions . . . apply with respect to the same loan." § 528, 94 Stat. 168.

■ In the case before us today, preemption under subsection 501(a)(1) is clear because the Nelsons' loan was secured by a first lien on residential real property. Hence, there is no limit on the maximum rate of interest that may be charged on the note. In contrast, if the Nelsons' loan violated a single provision of the federal consumer protection regulations, there would be no preemption under subsection 501(c), and River Valley would be limited to charging 5% above the federal discount rate. Because subsection 501(a)(1) clearly allows for a greater rate of interest than subsection 501(c), and thus is more "hospitable" to preemption in this case, we conclude that the trial court did not err when it held that subsection 501(a)(1) was the controlling provision of the Monetary Control Act.

---

[1] Section 528 was never separately codified. Instead, section 528 appears in the historical note following the codification of section 501 at 12 U.S.C. § 1735f-7.

■ For these reasons, we hold that the trial court did not err when it held that Arkansas usury law was preempted by subsection 501(a)(1) of the Monetary Control Act. Accordingly, we affirm on direct appeal.

## II. Attorneys' Fees

■ On cross-appeal, River Valley argues that the trial court erred when it denied its request for attorneys' fees. It is well settled under Arkansas law that attorneys' fees are awarded only when expressly provided for by a statute or rule. *Security Pac. Hous. Servs., Inc. v. Friddle*, 315 Ark. 178, 866 S.W.2d 375 (1993). We have also clarified that the decisions of whether to award fees and how much to award are discretionary determinations that will be reversed only if the appellant can demonstrate an abuse of discretion. *Security Pac., supra*; *Chrisco v. Sun Indus. Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

■ In this case, River Valley filed a motion asking for attorneys' fees pursuant to Ark. Code Ann. § 16-22-308 (Repl. 1995). The trial court denied River Valley's motion without explanation, and thus we are unable to determine if the court found, in its discretion, that attorneys' fees were not warranted in this case, or that Ark. Code Ann. § 16-22-308 was inapplicable. Without a specific ruling, it is impossible for us to say that the trial court erred. Accordingly, we also affirm on cross-appeal.

Affirmed on direct appeal and cross-appeal.

CORBIN and THORNTON, JJ., concur.

RAY THORNTON, Justice, concurring. I concur with the result reached by the majority, but would affirm on direct appeal based on my conclusion that there was substantial compliance with the applicable consumer protection regulations. In my view, compliance with these regulations is required to extend the preemption of state usury laws with respect to the financing of a manufactured home.

CORBIN, J., joins.